UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| NATHANIEL A. ROBINSON, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | Case No. 4:16CV00188 ERW |
| IAN WALLACE, | ) | |
| Respondent(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Nathaniel A. Robinson's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [1] and Amended *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [3].

**I.     BACKGROUND**

Petitioner Nathanial A. Robinson ("Petitioner") was convicted by jury of one count of first-degree involuntary manslaughter and one count of abuse of a child resulting in death. The Circuit Court of the City of St. Louis found Petitioner to be a prior offender and sentenced him to seven years for the manslaughter count and twenty years for the abuse of a child count, to be served concurrently. Petitioner appealed his convictions, and the Missouri Court of Appeals for the Eastern District of Missouri affirmed Petitioner's convictions, but agreed he should not be classified as a prior offender. Petitioner filed a timely motion for post-conviction relief ("PCR motion") which was denied by the post-conviction relief motion court ("the PCR motion court"). The appellate court affirmed the denial of Petitioner's PCR motion. Petitioner now challenges his convictions before this Court.

1

The Missouri Court of Appeals, Eastern District, described the facts of Petitioner's convictions as follows:

> A jury convicted Robinson of the charges that arose from the death of his three year-old biological son, D.V., who was living with Robinson during the summer. Also living in the home were D.V.'s stepmother and four half-siblings. On July 3, 2007, Robinson was caring for his son while the child's stepmother was at work. D.V.'s stepmother testified that when she left for work, D.V. was fine and in good health. She did not see D.V. when she got home from work that night. She further testified, however, that when she returned home from getting groceries the next morning, July 4, 2007, Robinson told her D.V. had suffered from a seizure and paramedics took him to the hospital.
>
> Dr. James Gerard, a pediatric emergency medicine physician, testified that when the ambulance brought D.V. to Cardinal Glennon Hospital, D.V. was in cardiopulmonary arrest. Dr. Gerard observed bruises, lacerations, and retinal hemorrhaging in both eyes, which he considered consistent with a finding of abuse. Dr. Gerard testified he suspected that D.V.'s injuries were caused by "nonaccidental" injuries. D.V.'s condition worsened and his brain swelled. Scans ultimately showed no brain activity. D.V. was pronounced dead two days after his admission to the hospital.
>
> Dr. Jane Turner, the medical examiner, testified she observed injuries to D.V. during his autopsy. Dr. Turner testified that D.V.'s cause of death was due to a closed head injury based on the cumulative effect of the injuries to his brain, head, ears and face. According to Dr. Turner, the injury to D.V.'s head was caused by someone shaking him "very violently" and striking his head "very violently."

ECF No. 10-6, pgs. 6-7.[1]

## II. STANDARD

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

---

[1] These facts are taken directly from the Court of Appeals Memorandum affirming petitioner's conviction on direct appeal. A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254(e).

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. *Id.* at § 2254(e)(1).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). An unreasonable application of clearly established Supreme Court precedent is found where the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004). Finally, a state court decision may be considered an unreasonable determination of the facts "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Id.*

## III. DISCUSSION

Petitioner asserts the following six claims in his motion to vacate his convictions: (1) the trial court erred in overruling Petitioner's motion for judgment of acquittal at the close of evidence; (2) the trial court erred in overruling Petitioner's motion to dismiss count one and count two of "twice jeopardy"; (3) the trial court plainly erred causing manifest injustice or a miscarriage of justice in entering written judgment; (4) his trial counsel was ineffective because he failed to investigate Petitioner's history of mental illness; (5) his trial counsel was ineffective for the questions he asked on cross-examination of the medical examiner; and (6) his trial

counsel was ineffective for failing to call Dr. Stephen E. Godfrey as a witness. The Court will address each claim as follows.

   A.   *Ground One – Insufficient Evidence*

In his first claim, Petitioner asserts the trial court erred in overruling his motion for judgment of acquittal at the close of all of the evidence because, according to Petitioner, the evidence was insufficient to support convictions on Count 1 for involuntary manslaughter and Count 2 for abuse of a child resulting in death. Petitioner alleges the State failed to prove beyond a reasonable doubt his actions caused the victim's death and intervening causes, such as falls and seizures, were not responsible for his death.

A state prisoner who alleges there is insufficient evidence to support his conviction has stated a federal constitutional claim and such a claim is cognizable in a federal habeas corpus proceeding. *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). When reviewing a sufficiency of the evidence claim, the question before the federal court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 318-319.

In 2007, the year in which Petitioner committed the crimes and in which he was charged with the crimes for which he was convicted, a person committed the crime of involuntary manslaughter in the first degree under Missouri Revised Statute § 565.024 when he or she:

(1) Recklessly causes the death of another person; or

(2) While in an intoxicated condition operates a motor vehicle in this state and, when so operating, acts with criminal negligence to cause the death of any person; or

(3) While in an intoxicated condition operates a motor vehicle in this state, and, when so operating, acts with criminal negligence to:

(a) Cause the death of any person not a passenger in the vehicle operated by the defendant, including the death of an individual that results from the defendant's

vehicle leaving a highway, as defined by section 301.010, RSMo, or the highway's right-of-way; or

(b) Cause the death of two or more persons; or

(c) Cause the death of any person while he or she has a blood alcohol content of at least eighteen-hundredths of one percent by weight of alcohol in such person's blood; or

(4) Operates a motor vehicle in violation of subsection 2 of section 304.022, RSMo, and when so operating, acts with criminal negligence, as defined in section 304.022, RSMo, while such person is in the performance of official duties.

Mo. Rev. Stat. § 565.024 (2007). "A person acts recklessly or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. Mo. Rev. Stat. § 562.016.4 (2007).

After review of the trial testimony, taking the evidence in the light most favorable to the prosecution, the Court finds there was sufficient evidence introduced at trial for a rational trier of fact to find, beyond a reasonable doubt, the essential elements of the crime of involuntary manslaughter. Two medical doctors testified to the extent of the injuries to the victim, D.V. Dr. James Matthew Gerard, the pediatric emergency medicine physician who treated D.V. when he was brought to the emergency room, testified D.V. had sustained many traumatic injuries including multiple bruises on his body, lacerations or large cuts on his body, a subconjunctival hemorrhage in one of his eyes, and retinal hemorrhages in his eyes. Tr. Vol. 1, pg. 662.[2] He testified these injuries were consistent with significant traumatic injury and typically caused by abuse. Tr. Vol. 1, pgs. 662-63. He further testified the retinal hemorrhages is usually the result of violent shaking and striking the child's head on an object. Tr. Vol. 1, pg. 683-84. Dr. Gerard stated he could not tell who inflicted these injuries, but that it was an adult person, and a child

---

[2] Tr. refers to the Trial Transcript, filed at ECF No. 10-1 and 10-2.

would not be able to inflict injuries to this degree on another child. Tr. Vol. 1, pg. 699. According to Dr. Gerard, the injuries sustained by D.V. are not the result of a child sustaining accidental injuries around the home or from a routine fall. Tr. Vol. 1, pg. 730.

Dr. Jane Willman Turner, the medical examiner in this case, corroborated Dr. Gerard's testimony. She testified the injuries to D.V.'s head were caused by multiple blunt impacts to his head and by shaking. Tr. Vol. 2, pgs. 845, 848. She further testified these injuries would not be consistent with a trivial fall or a fall from a bed and are consistent with abuse. Tr. Vol. 2, pgs. 850, 852. Dr. Turner stated a seizure would not cause these injuries. Tr. Vol. 2, pg. 853. Dr. Turner concluded D.V. died at the hands of another person. Tr. Vol. 2, pg. 857.

Nathanial Robinson, Jr., D.V.'s half-brother, testified he heard D.V. crying and heard him getting a whipping from his father. Tr. Vol. 1, pg. 614. Sergeant Dino Joseph Orlando, who responded to Petitioner's address on the day D.V. was transported to the hospital, spoke with Nathanial Robinson, Jr. who told Sergeant Orlando his father had struck D.V. the night before D.V. was taken to the hospital. Tr. Vol. 1, pg. 631.

Through the testimony of Dr. Gerard and Dr. Turner, the State proved D.V.'s injuries were caused by blunt force trauma and not falls or seizures. Through the testimony of Nathanial Robinson, Jr. and Sergeant Orlando, the State proved Petitioner inflicted the injuries on D.V. A reasonable jury could find, beyond a reasonable doubt, Petitioner recklessly caused the death of D.V. The trial court did not err in denying Petitioner's motion for judgment of acquittal.

In 2007, a person committed the crime of abuse of a child when he or she:

(1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old.

Mo. Rev. Stat. § 568.060 (2007). A reasonable jury could find, beyond a reasonable doubt, the State proved Petitioner knowingly inflicted cruel and inhuman punishment against D.V., who

6

was less than seventeen years old, through the introduction of the evidence cited by the Court *supra*. Petitioner's claim the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support his convictions will be denied.

B.     *Ground Two – Double Jeopardy*

In his second claim, Petitioner asserts the trial court erred in overruling his motion to dismiss count II for abuse of a child resulting in death because being charged with abuse of a child resulting in death (Count II) and first-degree murder (Count I)[3] results in double jeopardy. Petitioner argues the offenses contained the same elements and should have been merged.

Petitioner raised this claim in his direct appeal. The Missouri Court of Appeals concluded:

> . . . Claims of error that first appear in the argument portion of a brief but are not included in the point relied on are not preserved for review. We review this point *ex gratia*.
>
> Whether a defendant's right to be free from double jeopardy was violated is a question of law, which we review de novo. The Fifth Amendment guarantees an individual's right to be free from double jeopardy. It also prohibits multiple punishments for the same offense. This prohibition is designed to ensure courts comply with the sentencing limits set by the legislature.
>
> Here, Robinson claims the trial court erred in convicting him of two crimes arising from the same act. Where such an allegation is made, the question is whether the legislature intended cumulative punishment. If the legislature specifically authorizes cumulative punishment under two separate statutes prohibiting the same conduct, multiple punishments may be imposed without violating a defendant's right to be free from double jeopardy. However, if the statutes are silent regarding whether cumulative punishment is authorized, the court looks to Section 556.041. Section 556.041, in relevant part, generally limits the prosecution for multiple offenses where one offense is included in another as defined in Section 556.046.
>
> Under Section 556.046, an included offense is one that is established by "proof of the same or less than all of the facts required to establish the commission of the offense charged." The analysis of included offenses centers upon the statutory

---

[3] Petitioner was originally charged with first-degree murder but the jury found him guilty of involuntary manslaughter.

> elements of the offenses rather than upon the evidence offered at trial. We must compare the elements of the two offenses without regard to the specific conduct alleged. If each offense ultimately requires proof of an element not required in the other offense, neither is an included offense under Section 556.046.
>
> In the present case, Robinson was convicted of first-degree involuntary manslaughter under section 565.024. To be convicted of this charge, the state must prove that Robinson: (1) recklessly (2) caused the death (3) of another person. Robinson was also convicted of abuse of a child resulting in death, pursuant to section 568.060. This statute requires proof that Robinson (1) knowingly (2) inflicted cruel and inhuman punishment (3) upon a child less than seventeen years old, and (4) the child died as a result of the injuries inflicted.
>
> Based upon the statutory provisions, a conviction for abuse of a child resulting in death requires proof that a defendant acted knowingly while first-degree involuntary manslaughter only requires proof of recklessness. Therefore, because each crime requires proof of an element the other does not, they constitute separate offenses. As a result, the trial court did not violate the prohibition against multiple punishments for the same offense, and Robinson's right to be free from double jeopardy was not violated by his convictions for first-degree involuntary manslaughter and abuse of a child resulting in death.

ECF No. 10-6, pg. 9-11 (internal citations omitted).

Petitioner's double jeopardy claim is procedurally defaulted because the appellate court denied his claim on procedural grounds. Petitioner did not include his claim of error in the point relied part of his brief but only included it in the argument portion of his brief before the appellate court. Therefore, his claim was not preserved for review. Under the adequate and independent state ground doctrine, a federal court must honor a state court's holding that is a "sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989). If a state court explicitly invokes a state procedural bar as a separate basis for decision, the federal court cannot hear the issue even if it deals with a federal question and the state court offered an alternative merits analysis. *Id*. Thus, because the state court procedurally barred Petitioner's claim, this Court cannot review it.

However, even if the Court reached the merits of Petitioner's double jeopardy claim, the decision of the Missouri Court of Appeals is entitled to deference. 28 U.S.C. § 2254(d). The

8

Double Jeopardy Clause of the United States Constitution does not "preclude[] the imposition, in a single trial, of cumulative punishments" pursuant to two statutes if the legislature specifically authorizes cumulative punishment under two statutes. *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). The appellate court's decision is not contrary to, nor does it involve, an unreasonable application of federal law. This claim will be denied.

  C. *Ground Three – Prior Offender Classification*

In his third claim, Petitioner asserts the trial court plainly erred and caused manifest injustice when it entered a judgment and sentence reflecting Petitioner was a prior offender under Missouri Revised Statute 558.016. This claim will be dismissed because there is no issue for the Court to redress. Petitioner sought this same relief in his direct appeal and the Missouri Court of Appeals granted his claim. The appellate court ordered the judgment and sentence to be corrected and the trial court's designation of Petitioner as a prior offender to be removed. Thus, there is no further relief the Court can grant on this claim. It will be denied.

  D. *Ground Four – Ineffective Assistance of Counsel*

In his fourth claim, Petitioner alleges his trial counsel was ineffective for failing to investigate his history of mental illness. Specifically, Petitioner asserts his counsel failed to present evidence he suffered from depression and was under the care of a psychiatrist, was prescribed antidepressants, and experienced severe side effects from the medications.

Petitioner raised this claim in his PCR motion, but he did not raise it in his appeal of his PCR. Therefore, his claim is procedurally defaulted. *See Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005) (A claim is procedurally barred if it is not included in the appeal of a petitioner's PCR motion). To overcome procedural default, Petitioner must establish cause and prejudice, which he is unable to do. This claim will be denied.

9

*E.     Ground Five – Ineffective Assistance of Counsel*

In his fifth claim for relief, Petitioner asserts his trial counsel was ineffective for asking Dr. Turner, the medical examiner, what information regarding the circumstances of D.V.'s death she had available to her before she conducted the autopsy. Petitioner raised this claim in his PCR motion and in his appeal of his PCR motion.

The PCR court held as follows regarding Petitioner's claim:

> The first allegation in the Amended Motion is that Movant's trial counsel was ineffective for asking the medical examiner during cross-examination what information she had regarding the accounts available to her when she conducted the autopsy. Movant contends that this questioning opened the door to prior bad acts and uncharged crimes which were otherwise inadmissible.
>
> The extent of cross-examination is generally a matter of trial strategy. In the instant case trial counsel articulated a reasonable trial strategy for asking the medical examiner what information she had available to her in making her assessment. Counsel indicated that her answer was unexpected given the question he posed and that he did not request that it be stricken because he felt it best not to highlight the answer but rather to act as if it had not been said. Additionally, there was testimony regarding prior bad acts with respect to D.V. that came out during the testimony of both his wife and his stepson. Further, given the significant evidence of guilt in the instant case the Court finds that there is no reasonable probability that the result of the trial would have been different had this testimony from the medical examiner not come out at trial or been stricken after it came out. This allegation is denied.

ECF No. 10-9, pgs. 90-91 (internal citations omitted). The appellate court affirmed the PCR court's decision:

> A court will not find ineffective assistance of counsel where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy. "A strategic decision is reasonable if it was made with the same skill and diligence that another reasonably competent attorney would use under similar circumstances." "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance."
>
> In his brief, Movant argues extensively about the inadmissibility of Dr. Turner's statement that Movant had abused his wife and children. However, the question before this court is not whether Dr. Turner's statement was, as Movant claims, "inadmissible, irrelevant, and highly prejudicial." Rather the issue is whether trial

10

counsel's decision to pose the questions that elicited the statement was reasonable under the circumstances of the case.

At the evidentiary hearing, trial counsel testified that his strategy when cross-examining an expert witness is to first elicit the information available to the witness when she formed her opinion and then expose the relevant information that was unknown to that expert in order to cast doubt on her conclusions. According to trial counsel, the purpose of his inquiry was to demonstrate that Dr. Turner did not consider all of the circumstances surrounding D.V.'s injuries and therefore overlooked other potential, accidental causes. The motion court found that trial counsel "articulated a reasonable trial strategy."

The transcript demonstrates that trial counsel, in fact, employed the strategy he described at the hearing. After trial counsel asked Dr. Turner to recount the information available to her at the time of the autopsy, he questioned whether she knew the ages of D.V.'s half-siblings, the nature of their interactions, the roughness of their play, or whether N.R. had "any violent tendencies" or "liked to punch other kids." Based on our review of the record, we conclude that trial counsel's strategy for challenging Dr. Turner's conclusion that D.V.'s injuries were nonaccidental was reasonable. The motion court did not clearly err in denying Movant's Rule 29.15 motion because Movant failed to demonstrate that trial counsel did not exercise the customary skill and diligence of a reasonably competent attorney when he cross-examined Dr. Turner. Point denied.

ECF No. 10-12, pgs. 12-13.

The decisions of the state appellate court are entitled to deference. 28 U.S.C. § 2254(d). The appellate court's application of *Strickland v. Washington*, 466 U.S. 668, 687 (1984) was reasonable in concluding trial counsel's strategy for cross-examination of Dr. Turner was reasonable and Petitioner failed to demonstrate his counsel did not exercise the customary skill and diligence of a reasonably competent attorney. The appellate court's decision is not contrary to, nor does it involve, an unreasonable application of federal law. This claim will be denied.

  F.  *Ground Six – Ineffective Assistance of Counsel*

In his sixth claim, Petitioner asserts his trial counsel was ineffective for failing to endorse, subpoena, and call expert witness Dr. Stephen E. Godfrey to refute the medical examiner's findings. Petitioner alleges Dr. Godfrey was willing and able to testify accidental falls and seizures could have caused D.V.'s death.

11

Petitioner raised this claim in his PCR motion and in his appeal of his PCR motion. Therefore, this claim is not procedurally defaulted. The PCR court denied Petitioner's claim and concluded:

> The final allegation in Movant's Amended Motion is that trial counsel failed to endorse, subpoena and call Dr. Godfrey to testify that accidental falls involving head trauma which precipitate seizures could have been the manner of death instead of homicide by blunt trauma at the hands of another and would have provided a viable defense.
>
> This allegation is without merit and denied. Counsel's decision not to call a witness is presumptively a matter of trial strategy unless movant clearly establishes otherwise. As testified to by trial counsel, Dr. Godfrey's report and conclusion following examination of the records of this case would not have provided a viable defense and would have helped the State's case. Dr. Godfrey essentially agreed with the medical examiner's assessment and his statement that there was an outside possibility that the falls caused the death of the victim but that it was much more likely that the death was caused at the hands of another, would not have provided a viable defense. Additionally, trial counsel investigated the other medical issue of whether hypoglycemia could have precipitated falls and seizures and the opinion of Dr. Godfrey on this issue was also not helpful to the defense.

ECF No. 10-9, pgs. 93-94 (internal citations omitted). The appellate court affirmed the PCR court's denial of Petitioner's claim and held as follows:

> A decision not to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. To establish ineffective assistance of counsel based on failure to call a witness, a movant must demonstrate that: (1) trial counsel knew or should have known of the witness's existence; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense. "If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance."
>
> . . .
>
> Contrary to Movant's claim on appeal, Dr. Godfrey's testimony did not "refute the medical examiner's findings." Dr. Godfrey agreed with Dr. Turner that the cause of D.V.'s death was blunt force trauma. At the hearing, Dr. Godfrey testified, "I don't doubt that the cause of death is a traumatic head injury as found by the medical examiner's staff for the City of St. Louis in their forensic autopsy." Dr. Godfrey also stated that "the many bruises on this child" were consistent with Dr. Turner's findings of abuse. Furthermore, Dr. Godfrey's

> proposed testimony regarding an "outside possibility" that D.V.'s traumatic head injury resulted from an accidental fall did not "unqualifiedly support" Movant's defense. Instead, Dr. Godfrey's testimony would have supported the State's case by highlighting the likelihood that D.V.'s death was caused by the hands of another.
>
> "When defense counsel believes a witness' testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel." The motion court did not clearly err in rejecting Movant's claim of ineffective assistance of counsel because Movant did not overcome the presumption that trial counsel's decision not to call Dr. Godfrey was reasonable trial strategy.

ECF No. 10-12, pgs. 14-15 (internal citations omitted).

The decisions of the state appellate court are entitled to deference. 28 U.S.C. § 2254(d). The appellate court's holding Petitioner's counsel's decision not to call Dr. Godfrey was reasonable and a question of trial strategy is not contrary to, nor an unreasonable application of, federal law. Similar to the appellate court's analysis, the Eighth Circuit has stated: "The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). It is clear Dr. Godfrey's testimony would not have aided Petitioner's defense and instead would have helped the state. It was reasonable for his attorney to decide not to call him as a witness. This claim will be denied.

### IV.     CERTIFICATE OF APPEALABILITY

The Court finds Petitioner has not made a substantial showing of the denial of a constitutional right, as is required before a certificate of appealability can issue. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Therefore, the Court shall not issue a certificate of appealability as to any claims raised in Petitioner's § 2254 Motion.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that Petitioner Nathaniel A. Robinson's *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [1] is **DENIED**.

**IT IS FURTHER ORDERED** that Amended *Pro Se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [3] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Nathanial A. Robinson's claims are **DISMISSED**, **with prejudice**.

So Ordered this 17th day of January, 2019.

*E. Richard Webber*

**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**